UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

               Plaintiff,

  - against -                                  **MEMORANDUM & ORDER**
                                                   18-CV-1104 (PKC) (LB)

ANDREW JOHN THOMAS, a/k/a RODGER
SMITH, CONNOR MEDAVID, CARL LOGAN
and KARL LOGAN; PATRICK FRASER, a/k/a
OLEG KARILENKO and IGOR KOVALEV;
CHRISTOPHER FRASER, a/k/a SHAWN
HANNITY; SYLVAIN MUNIER, a/k/a GARY
KOENIG, ROBERT JEFFRIES, KURT MEYER,
and SIGMUND KRUEGER; UBUKI KANEHIRA,
a/k/a VICTORIA KANEHIRA, VERA
NAKAYAMA, JENNIFER MATHEWS, AND
PAMELA HENDERSON; ALLIED GLOBAL
LOGISTICS LLC, 1099811 B.C. LTD, and
1116411 B.C. LTD,

               Defendants.
-------------------------------------------------------------X
PAMELA K. CHEN, United States District Judge:

      This action was brought by Plaintiff United States of America ("Plaintiff" or the "United States"), pursuant to 18 U.S.C. § 1345, alleging that Defendants Andrew John Thomas, Sylvain Munier, Allied Global Logistics LLC, 1099811 B.C. LTD, and 1116411 B.C. LTD (collectively, "Defaulting Defendants"), as well as other named Defendants, had engaged, and would continue to engage, in mail fraud, attempted mail fraud, and mail fraud conspiracy, in violation of 18 U.S.C. §§ 1341 and 1349. (*See generally,* Complaint ("Compl."), Dkt. 1.) The United States now moves for default judgment and permanent injunctive relief against Defaulting Defendants. (Dkt. 44.) For the reasons set forth below, the United States' motion is granted.

1

**BACKGROUND**

**I.     Complaint**

On February 21, 2018, the United States filed a detailed complaint seeking injunctive relief against Defendants Andrew John Thomas, Patrick Fraser, Christopher Fraser, Sylvain Munier, Ubuki Kanehira, Allied Global Logistics LLC, 1099811 B.C. LTD, and 1116411 B.C. LTD (collectively, "Defendants"). (*See generally,* Compl.)[1] The Complaint alleged that since January 2016, Defendants had engaged in, and were currently engaging in, an unlawful mail fraud scheme, causing substantial injury to thousands of fraud victims, by sending false and misleading solicitations using U.S. mail and U.S.-based mailboxes in Hawaii, Colorado, Minnesota, Arizona, and Wyoming. The mail solicitations falsely informed recipients in Germany, the Netherlands, France, Austria, Switzerland, and Japan that they would receive large amounts of lottery or sweepstakes money in return for payment of a delivery or processing fee. (*Id.* ¶¶ 1-6, 33-38.)[2]

The Complaint further detailed each individual Defendant's specific involvement, role, knowledge, and concealment of the fraudulent scheme,[3] citing specific, concrete

---

[1] The Court accepts all well-pleaded factual allegations in the Complaint as true, summarizing them here where relevant. *See Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) ("Where . . . the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal citations omitted). The Complaint in this case makes no claim for monetary damages. (*See* Compl., at ECF 18-21.)

[2] Citations to Court documents reference either the document's internally numbered paragraphs or the pagination generated by the CM/ECF docketing system (and not the document's internal pagination).

[3] Specifically, the United States established that Defendant Andrew John Thomas ("Thomas") oversaw all aspects of the business, including drafting many of the fraudulent solicitations sent by Defendants, hiring other employees, and planning mailing campaigns and strategy. (Compl. ¶¶ 38-39.) The Complaint also stated that Thomas and Defendant Patrick Fraser

misrepresentations made in the solicitations (attached to the Complaint as exhibits) and detailing the harm suffered by the mail fraud victims, who paid the requested delivery and processing fees, which were generally in the range of $20-40, in order to receive the cash prizes that were purportedly worth more than $1 million. (*See id.* at ¶¶ 6-7, 22-72 (citing Exhibits A-E, at ECF 23-41).) The Complaint also described, in detail, how Defendants caused responses to those solicitations to enter the U.S. mail via the U.S. Postal Service International Service Center at John F. Kennedy International Airport (the "New York ISC") in the Eastern District of New York, and how, as a result of the scheme, Defendants succeeded in fraudulently obtaining an estimated $4.5 million annually from mail fraud victims. (*See id.*)

## II.     TRO and Order to Show Cause

Pursuant to 18 U.S.C. § 1345, the United States sought a temporary restraining order ("TRO"), as well as preliminary and permanent injunctive relief to enjoin Defendants from

---

began their own fraudulent direct mail company using various business names, including "International Data Direct," to receive payments forwarded to shell corporate entities owned and/or operated by Defendants, including 1099811 B.C. LTD and 1116411 B.C. LTD (incorporated in British Columbia, Canada), and Allied Global Logistics, LLC incorporated in Wyoming). (*Id.* ¶ 64.) Additionally, the Complaint alleged that Thomas and Defendant Patrick Fraser hired other individual Defendants to work for them. (*Id.* ¶ 39.) According to the Complaint, Thomas sent an email in July 2016 to Defendants Patrick and Christopher Fraser describing his strategy to conceal Defendants' identities and location, which included the use of four mailboxes in both the U.S. and Australia, forwarding payments to a "hub" mailbox in each country, and then routing victim payments to Buffalo, New York to be driven across the Canadian border to Toronto. (*Id.* at ¶ 38.) The Complaint explained that Defendant Sylvain Munier ("Munier") also worked for Defendants Thomas and Patrick Fraser since early 2016, conducting many tasks behind the scheme, including proofreading solicitations; coordinating with translators, printers, and postage brokers to schedule the mailings; picking up victim mail from commercial mail receiving agencies; and "caging" victim payments. (*See id.* ¶¶ 31, 38, 62-63 (explaining that "caging" involves "opening and reviewing victim responses, recording information regarding the victim's identity, payment method, and the amount of payment in a database, and facilitating the transmission of cash and checks [or any other currency, money orders, or credit card charge authorizations] to Defendants' payment processor or bank for deposit in accounts held by Defendants.").)

engaging in mail fraud by prohibiting them from, *inter alia*: (1) sending false and misleading mail solicitations; (2) selling any lists of U.S. residents or mailing lists compiled from U.S. residents of recipients who had responded via U.S. mail to any of the solicitations; (3) performing any "caging services" on mail received via U.S. mail, including opening mail received from recipients, entering or inputting data about recipients into a database, or forwarding such data; (4) handling, forwarding, or depositing payments received from recipients; and (5) destroying any records related to the mail fraud scheme. (*See id*; *see also* United States' Proposed TRO and Order to Show Cause, Dkt. 3.)

On February 21, 2018, the Court entered a TRO *ex parte*, based upon its review of the Complaint submitted by the United States that same day, finding that (1) there was probable cause to believe that Defendants were violating and would continue to violate 18 U.S.C. §§ 1341 and 1349, and (2) the statutory conditions for granting injunctive relief under 18 U.S.C. § 1345 had been met. The Court issued an Order to Show Cause directing Defendants to appear on March 7, 2018 to show why a preliminary injunction should not be granted. (Dkt. 9.) The Court also directed the United States to serve Defendants, by February 23, 2018, with a copy of the Complaint, TRO, and Order to Show Cause; the Declarations of Terrence Sullivan, Harm Sietze Van Der Velde, and Katherine McIntyre; certification pursuant to Fed. R. Civ. P. 65(b)(1)(B); and the United States' memorandum of law. (*Id.*) The Court further ordered Defendants to serve and file any response to the application for a preliminary injunction by 5:00 p.m. on February 28, 2018. (*Id.*)

On February 23, 2018, the Court granted the United States an extension to serve Defendants by February 27, 2018. (Feb. 23, 2018 ECF Docket Order.) The Court ordered Defendants who were already served to file their responses by February 28, 2018, and any

4

Defendants served thereafter to respond by March 6, 2018. (*Id.*; *see also* Declaration of Josephine Vella dated April 3, 2018 ("Vella Decl."), Dkt. 31.) A copy of the Summons, Complaint, TRO, and Order to Show Cause, as well as the accompanying declarations, certification, and memorandum of law were all served on Allied Global Logistics LLC on February 21, 2018; on Thomas on February 23, 2018; on Munier and 1116411 B.C. LTD on February 26, 2018; and on 1099811 B.C. LTD on February 28, 2018. Proof of service on each Defendant was filed with the Office of the Clerk of the Court. (Dkts. 12, 16, 18, 19, 20.)

On March 6, 2018, the Court extended the TRO and adjourned the Show Cause Hearing to March 28, 2018. (*See* Mar. 6, 2018 ECF Order; Vella Decl.) The Court then instructed Defaulting Defendants to submit written responses to the Order to Show Cause on the preliminary injunction motion and/or opposition to the extension of the TRO by 5:00 p.m. on March 20, 2018. (*Id.*) Defaulting Defendants did not file any written responses by the March 20, 2018 deadline.

**III.     Preliminary Injunction**

On March 28, 2018, the Court granted a stipulated consent motion for preliminary injunction between the United States and Defendants Patrick Fraser and Christopher Fraser (the "Fraser Defendants") (Dkt. 29), and held a formal hearing on the Order to Show Cause.[4] The Court granted the United States' request and issued a preliminary injunction as to Defaulting Defendants, none of whom appeared in the matter or showed cause as to why the Court should not

---

[4] The Court also approved a briefing schedule and adjourned the hearing on the Order to Show Cause as to Defendant Kanehira only, extending its original TRO as to Defendant Kanehira, pending decision by the Court on her combined application to dismiss the complaint and vacate the TRO, which had not yet been filed. (*See* Court's Mar. 28, 2018 Order Denying Dkt. 28, Defendant Kanehira's Motion for Pre Motion Conference.) Kanehira never filed her application, and the Court subsequently reviewed, approved, and entered two consent decrees between the United States and Kanehira and the United States and the Fraser Defendants, respectively. (*See* Court's Aug. 7, 2018 ECF Order; Dkts. 40, 41.)

issue the requested preliminary injunction. (*See* Court's Mar. 28, 2018 ECF Minute Order; Preliminary Injunction, Dkt. 30.)

## IV. Entry of Default

To date, Defaulting Defendants have failed to appear, plead, or otherwise respond to the Complaint. The applicable time limit for answering or otherwise responding to the Complaint has expired, and the Clerk's Certificate of Default as to Defaulting Defendants was entered on April 19, 2018. (Dkt. 35.)

## V. The United States' Motion for Default Judgment

The United States filed a motion for default judgment on September 14, 2018 against Defaulting Defendants. (Dkt. 44.) The United States also filed a Declaration of Service (Dkt. 45-1) confirming that a true and correct copy of its motion for default judgment, along with the appended exhibit, memorandum of law, and proposed order, had been served on Defendant Thomas' last known address via Federal Express ("FedEx") overnight delivery on October 4, 2018; that the same was delivered by personal service on September 20, 2018 on Defendant Munier; and that the same was delivered by FedEx overnight service to Allied Global Logistics LLC's, 1099811 B.C. LTD's, and 1116411 B.C. LTD's last known addresses on September 18, 2018. (Declaration of Jacqueline Blaesi-Freed ("Blaesi-Freed Decl.") in Support of the United States' Motion for Default Judgment, Dkt. 45-1, ¶¶ 5, 8-11; FedEx Delivery Confirmation, Exs. 3, 7, 9, 11.) To date, Defaulting Defendants have failed to file a response to the United States' motion for default judgment.

# DISCUSSION

## I. Legal Standard for Default Judgment

Under Rule 55(a) of the Federal Rules of Civil Procedure ("Rule 55(a)"), the process for entering judgment against a party who "fails to plead or otherwise defend" in a matter includes two steps: "first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (citation omitted). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c) [of the Federal Rules of Civil Procedure]." *Id.* In completing the second step, the Court must determine whether the well-pleaded facts establish the defendants' liability as a matter of law. *Id.* at 137.

## II. Entry of Default

A "typical Rule 55 case [is one] in which a default has entered because a defendant failed to file a timely answer," *id.* at 129 (quotation marks omitted) (alteration in original), and "a district court is also empowered to enter a default against a defendant [that] has failed to . . . 'otherwise defend,'" *id.* (quotation marks omitted) (alterations in original). This is precisely the case with Defaulting Defendants, who have completely failed to answer or move against the Complaint after being properly served. (Dkts. 12, 16, 18, 19, 20.) Defaulting Defendants also failed to enter an appearance or otherwise defend in the subsequent show cause hearing regarding the United States' request for a preliminary injunction on March 28, 2018. (*See* Court's Mar. 28, 2018 ECF Minute

Order; Preliminary Injunction, Dkt. 30.) Thus, the Certificate of Default (Dkt. 35) on April 19, 2018 against Defaulting Defendants was properly entered.

## III. Default Judgment

Once an entry of default has been entered, "a party's default is deemed to constitute a concession of all well pleaded allegations of liability . . . ." *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (quoting *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). Further, "[t]he decision to grant a motion for a default judgment lies in the sound discretion of the trial court." *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (citing *Shah v. N.Y.S. Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). Even so, a pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, "the factual allegations in the complaint must themselves be sufficient to establish a right to relief," *Chen v. JP Standard Constr. Corp.*, No. 14-CV-1086 (MKB) (RLM), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), *report and recommendation adopted*, 2016 WL 2758272 (E.D.N.Y. May 12, 2016), and a district court is "'required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law,'" *Mickalis,* 645 F.3d at 137 (quoting *Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009)). Thus, notwithstanding a defendant's default, a plaintiff must still demonstrate "that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action." *Wider Consol., Inc. v. Vision Prods. Co.*, No. 17-CV-3427 (RRM) (ST), 2018 WL 1320685, at *2 (E.D.N.Y. Feb. 22, 2018), *report and recommendation adopted*, 2018 WL 1320664 (E.D.N.Y. Mar. 13, 2018) (citing *Mickalis*, 645 F.3d at 137; *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Here, the Court has already found that the United States' well-pleaded factual allegations, summarized above, are sufficient to establish the Defaulting Defendants' liability and a right to relief under 18 U.S.C. §§ 1341, 1345, and 1349. (*See supra,* at 2-6); *see also Wider*, 2018 WL 1320685, at *2; *Mickalis*, 645 F. 3d at 137; *Finkel*, 577 F.3d at 84. Moreover, as the Court found in issuing the initial TRO and Preliminary Injunction in this case, there is probable cause to believe that (1) Defaulting Defendants were violating—and absent the TRO and Preliminary Injunction, would continue to violate—18 U.S.C. §§ 1341 and 1349 by perpetrating an ongoing unlawful mail fraud scheme; and (2) irreparable harm to the public is presumed under 18 U.S.C. § 1345, where such statutory conditions for preliminary injunctive relief are met. (TRO and Order to Show Cause, Dkt. 9 at ¶¶ 1-4 (citing *United States v. Savran*, 755 F. Supp. 1165, 1179 (E.D.N.Y. 1991)); Preliminary Injunction, Dkt. 30 at ECF 1-2 (finding same).) On these facts, and as discussed further *infra* in Part IV, the Court finds that the United States has sufficiently established "[t]he essential elements of a mail [] fraud violation," *i.e.*, that Defendants were engaged in "(1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [] to further the scheme." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (quoting *United States v. Dinome,* 86 F.3d 277, 283 (2d Cir. 1996) (internal citation and quotation marks omitted)).

However, courts in this Circuit have considered three additional factors in determining whether default judgment is warranted under Rule 55, namely: (1) "whether the defendant's default was willful; (2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *DiPaolo,* 466 F. Supp. 2d at 476 (internal citation and quotation marks omitted); *see also United States v. Rabkin*, No. 18-CV-690 (MKB), 2018 WL

5777031, at *2 (E.D.N.Y. Nov. 11, 2018).[5]  In this case, all three factors weigh in favor of entry of default judgment.  The Court addresses each factor in turn.

### A.  Willfulness

Defaulting Defendants' abject failure to appear or respond to the Complaint, TRO, Order to Show Cause, and motion for default judgment sufficiently demonstrates willfulness.  "When a defendant is continually and 'entirely unresponsive,' a defendant's failure to respond is considered willful."   *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH) (AKT), 2018 WL 1525803, at *4 (E.D.N.Y. Mar. 1, 2018), *adopted by* 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citing *Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship, Skill Improvement & Safety Funds v. JREM Constr. Corp.*, No. 12-CV-3877 (NGG) (JMA), 2013 WL 618738, at *3 (E.D.N.Y. Jan. 28, 2013); *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

Here, the United States has filed proof of service with the Clerk of the Court establishing that Defaulting Defendants were served—by February 28, 2018 at the latest—with the Summons,

---

[5] Despite following the approach of other courts in this Circuit in applying these three factors, the Court is not convinced that the Second Circuit, in fact, requires the application of these factors in deciding whether to grant a default judgment motion in the first instance, as opposed to deciding whether to *vacate*, or grant the appeal of, a default judgment after the fact.  Although many courts in this Circuit cite *S.E.C. v. McNulty,* 137 F.3d 732, 738 (2d Cir. 1998) and *Pecarsky v. Galxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001) for the application of this three-part test to default judgment motions, *see, e.g.*, *DiPaolo,* 466 F.Supp.2d at 476; *Rabkin*, 2018 WL 5777031, at *2, *McNulty* involved the district court's denial of a motion to *vacate* a previously entered default judgment, and *Pecarsky* involved the *appeal* of the district court's granting of a default judgment motion.  It is unclear to this Court that the same standards should apply to the initial decision to grant default judgment and to the later decision of whether to grant a previously defaulting party's belated motion or appeal to undo the judgment.  The issues of willfulness, meritorious defense, and prejudice to the non-defaulting party would seem to be more relevant to the latter inquiry than the former one; indeed, it is hard to imagine how the meritorious defense issue can be effectively or fully briefed before the defaulting defendant makes an appearance in the case.

Complaint, TRO and Order to Show Cause, as well as the accompanying declarations, certification, and memorandum of law in support of the United States' motion for injunctive relief. (Dkts. 12, 16, 18, 19, 20.) None of the Defaulting Defendants either answered or otherwise responded in any way to the Complaint or TRO and Order to Show Cause, nor did they request any extensions of time to respond. (*See* Court's Mar. 28, 2018 ECF Minute Order; Preliminary Injunction, Dkt. 30.) Finally, the United States provided the Court with a Declaration of Service and attached exhibits indicating that Defaulting Defendants were timely and properly served with the notice of motion for default judgment and accompanying exhibit, memorandum of law, and proposed order. (Blaesi-Freed Decl. ¶¶ 5, 8-11; *see also* FedEx Delivery Confirmation, Exs. 3, 7, 9 & 11.) Thus, there is no indication that Defaulting Defendants' failure to respond to the Complaint, Order to Show Cause, and the instant motion—despite their being properly served—was anything other than deliberate.

Accordingly, the Court finds that Defaulting Defendants' default is willful. *See Northwell Health, Inc.*, 2018 WL 1525803, at *4 (finding failure of defendants to respond to complaint willful where plaintiff filed affidavits of service of the complaint and certificates of service indicating defendants were served with the motion for default judgment, including all memoranda, declarations, and exhibits); *Div. 1181 Amalgamated Transit Union-N.Y. Empls. Pension Fund v. D & A Bus Co., Inc.*, No. 16-CV-5014 (DRH) (AKT), 2017 WL 4043325, at *1 (E.D.N.Y. Sept. 12, 2017) (same) (citing, *inter alia*, *Elgard Corp. v. Brennan Constr. Co.*, 248 Fed. App'x 220, 222 (2d Cir. 2007); *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007)).

### B. Meritorious Defense

"While a defendant need not establish his defense conclusively, he must 'present evidence

of facts that, if proven at trial, would constitute a complete defense.'" *United States v. Myers*, 236 F. Supp. 3d 702, 707 (E.D.N.Y. 2017) (quoting *McNulty,* 137 F.3d at 740). Defaulting Defendants in this case have absolutely failed to present any facts or meritorious defenses, having neither filed an answer nor offered any defenses to the Court. Where, as here, "a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims," and this fact "weighs in favor of granting a default judgment." *Id.* at 707 (internal citations omitted).

### C. Prejudice

Finally, since Defaulting Defendants have not responded or appeared, denying a motion for default judgment would be prejudicial to the United States, "as there are no additional steps available to secure relief in this Court." *Myers*, 236 F. Supp. 3d. at 708–09 (citing, *inter alia*, *JREM Constr. Corp.*, 2013 WL 618738, at *4). If a default judgment is not granted, the United States will have no alternative legal redress to permanently enjoin Defaulting Defendants from engaging in the ongoing mail fraud scheme under 18 U.S.C. § 1345. *See id.* Moreover, a denial of the instant motion would be particularly prejudicial to the public's interest in preventing mail fraud, and attempt and conspiracy to commit mail fraud, under 18 U.S.C. §§ 1341 and 1349, as both constitute a "continuing and substantial injury to the United States." 18 U.S.C. § 1345. It would also be prejudicial to all other Defendants in this case, as all other Defendants have since appeared and are subject to judgment under consent decrees permanently enjoining them from engaging in the ongoing mail fraud scheme. (*See* Court's Aug. 7, 2018 ECF Order; Dkts. 40, 41.)

The Court thus finds that all three factors weigh heavily in favor of entry of default judgment.

12

## IV. Injunctive Relief

"The Court may issue an injunction on a motion for default judgment upon a showing by the moving party that it is entitled to injunctive relief under the applicable statute, and that it meets the prerequisites for the issuance of an injunction." *Kennedy v. Medgen, Inc*., No. 14-CV-5843 (ADS) (AYS), 2016 WL 6585812, at *5 (E.D.N.Y. Apr. 19, 2016) (quoting *Broadcast Music, Inc. v. 120 Bay Street Corp.*, No. 09–CV–5056 (BMC), 2010 WL 1329078, at *3 (E.D.N.Y. Apr. 5, 2010)), *adopted by* 2016 WL 6601450 (E.D.N.Y. Nov. 5, 2016); *see also Kingvision Pay–Per–View Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006) (same). 18 U.S.C. § 1345 gives the United States Attorney General the authority to seek an injunction "in any Federal court" when a person has violated or is about to violate one of the predicate statutes, which include 18 U.S.C. §§ 1341 (mail fraud) and 1349 (attempt or conspiracy to commit mail fraud), and where an injunction is "warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons." 18 U.S.C. § 1345. Pursuant to 18 U.S.C. § 1345, a court may "enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States."

First, the United States must establish that Defaulting Defendants were "violating or about to violate" the predicate mail fraud and attempt/conspiracy statutes. 18 U.S.C. § 1345(a); *see also id.* §§ 1341, 1349. Second, the United States must "prove that a permanent injunction is 'warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought.'" *United States v. Quadro Corp.*, 928 F. Supp. 688, 695 (E.D. Tex. 1996), *aff'd,* 127 F.3d 34 (5th Cir. 1997) (quoting 18 U.S.C. § 1345(b)). The Court's analysis is guided by the word "continuing" rather than "injury," as injury and irreparable harm are presumed when the statutory elements of mail fraud are established. *Id.* at 697.

As the Court found in issuing the initial TRO and Preliminary Injunction in this case, there is probable cause to believe that Defaulting Defendants were violating—and absent the TRO and Preliminary Injunction, would continue to violate—18 U.S.C. §§ 1341 and 1349 by perpetrating an ongoing unlawful mail fraud scheme; and as noted *supra,* irreparable harm to the public is presumed under 18 U.S.C. § 1345 where such statutory conditions for preliminary injunctive relief are met. (TRO and Order to Show Cause, Dkt. 9 at ¶¶ 1-4 (citing *Savran*, 755 F. Supp. at 1179); Preliminary Injunction, Dkt. 30 at ECF 1-2 (finding same).) *See also Quadro*, 928 F. Supp. at 697 (issuing permanent injunction against mail fraud under 18 U.S.C. § 1345) (citing *Savran,* 755 F. Supp. at 1179). Moreover, Defaulting Defendants are now deemed liable in light of all well-pleaded facts in the Complaint, due to their failure to answer, appear, or otherwise defend in default. *DiPaolo*, 466 F. Supp. 2d at 482.

On these facts, the Court finds that the United States has sufficiently established "[t]he essential elements of a mail [] fraud violation": that Defendants were engaged in "(1) a scheme to defraud, (2) money or property [as the object of the scheme], and (3) use of the mails [] to further the scheme." *Fountain*, 357 F.3d at 255 (quoting *Dinome,* 86 F.3d at 283 (internal citation and quotation marks omitted)). As to the first element, fraudulent intent is "[e]ssential to a scheme to defraud," and the United States need not prove that the scheme successfully defrauded the intended victim; it simply must show "that some actual harm or injury was *contemplated* by the schemer." *Dinome,* 86 F.3d at 283 (internal quotation marks and citations omitted) (emphasis in original).

Here, the United States specifically alleges facts establishing Defaulting Defendants' individual involvement[6] in all three elements of the underlying mail fraud violations under 18

---

[6] *See supra*, note 3, describing individualized factual allegations regarding the role, actions, and involvement of each of the Defaulting Defendants in the ongoing mail fraud scheme. (Compl. ¶¶ 17-20, 35-36, 38-39, 62-63.)

U.S.C. §§ 1341 and 1349. Since January 2016, Defaulting Defendants were each actively (1) engaging in and concealing an ongoing unlawful mail fraud scheme that caused substantial injury to thousands of fraud victims by sending false and misleading mail solicitations to recipients in Germany, the Netherlands, France, Austria, Switzerland, and Japan; (2) misrepresenting that recipients of the solicitations would receive large amounts of lottery or sweepstakes money in return for payment of a delivery or processing fee, and fraudulently obtaining an estimated $4.5 million annually from victims; by (3) using U.S. mail and U.S. based mailboxes via the New York ISC to further the scheme. (Compl. ¶¶ 1-7, 22-72 (citing Exs. A-E, ECF 23-41).) *Fountain*, 357 F.3d at 255.

Finally, although no overt act is required to establish attempt or conspiracy to commit mail fraud under 18 U.S.C. § 1349, *United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015), the United States has established, through detailed allegations, how Defaulting Defendants contemplated and intended actual harm to solicitation recipients, *Dinome,* 86 F.3d at 283, as well as how each of the Defaulting Defendants actually engaged in overt acts as part of the conspiracy to further the mail fraud scheme and its concealment. (*See* Compl. at ¶¶ 17-20, 35-36, 38-39, 62-63 (describing individual Defaulting Defendants reviewing, translating, and proofing fraudulent solicitations, and taking steps to manage, forward, conceal, and cage recipient payments, as revealed in email communications among Defendants).) The Court thus finds that the United States has asserted valid claims of continuing harm under 18 U.S.C. §§ 1341 and 1349 sufficient to warrant permanent injunctive relief under 18 U.S.C. § 1345. Additionally, the Court concludes that permitting Defaulting Defendants to perpetrate the ongoing mail fraud at issue would constitute irreparable harm, because it would cause substantial injuries, not only to legions of mail fraud victims, but also to the integrity of the U.S. postal system. *See Savran,* 755 F. Supp.

at 1180 (noting same).

Accordingly, the Court finds that permanent injunctive relief is warranted.

**V.      No Hearing Required**

The Court also finds that no hearing is required to issue a permanent injunction in this case. While the Federal Rules of Civil Procedure allow for a hearing, a hearing is not required in all cases. *See* Fed. R. Civ. P. 55(b)(2) ("The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."). As noted *supra*, the United States seeks no monetary damages in its motion for default judgment against Defaulting Defendants; thus, no accounting or damages determination is necessary. The United States also already submitted ample evidence in support of its allegations prior to the entry of the Certificate of Default. (*See* Compl. Exs. A-E, Dkt. 1, ECF 23-41; Feb. 20, 2018 Declaration of Terrence Sullivan, Dkt. 5; Feb. 13, 2018 Declaration of Harm Sietze Van Der Velde, Dkt. 6; Feb. 20, 2018, Declaration of Katherine McIntyre, Dkt. 7.)

Here, because Defaulting Defendants have absolutely failed to respond to the Complaint, TRO, the Court's Order to Show Cause, and the instant motion, and the United States has already filed reasonably detailed declarations and exhibit evidence addressing the potential injuries, Defaulting Defendants are deemed to have conceded liability. *Bio Hi-Tech Co. v. Comax, Inc.*, No. 07-CV-2260 (RRM)(CLP), 2009 WL 3497490, at *5 (E.D.N.Y. Oct. 28, 2009) (citing, *inter alia, Greyhound*, 973 F.2d at 158). As a result, there is no need for a hearing to establish the truth of any allegation. *Id.* at *6 ("[W]here plaintiff has filed reasonably detailed affidavits and exhibits pertaining to the potential injuries, and where defendants have failed to respond to either the Order of the Court or plaintiff's Motion, the

Court can make an informed recommendation regarding relief without an evidentiary hearing."). In this case, Defaulting Defendants have, to date, wholly failed to make any appearance, move to vacate the default, or oppose the motion for default judgment. As there is no need to investigate any other matter, and all factors are met under Fed. R. Civ. P. 55, the Court grants the United States' motion for default judgment.

## CONCLUSION

For the reasons stated above, Plaintiff's default judgment motion against Defaulting Defendants Andrew John Thomas, Sylvain Munier, Allied Global Logistics LLC, 1099811 B.C. LTD, and 1116411 B.C. LTD is granted. Plaintiff's Proposed Default Judgment and Order Pursuant to Fed. R. Civ. P. 55 is So Ordered, and the Clerk of Court is respectfully requested to enter judgment and terminate this case accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: January 7, 2019
      Brooklyn, New York